UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **William P. Morse,** | **Civil No. 06-2140 (RHK/SRN)** |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Michael J. Astrue,** **Commissioner of Social Security,** | |
| **Defendant.** | |

___

Fay E. Fishman, Esq., Peterson & Fishman, 3009 Holmes Avenue South, Minneapolis, Minnesota 55408, on behalf of Plaintiff

Lonnie F. Bryan, Esq., Assistant United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Defendant

___

SUSAN RICHARD NELSON, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff William Morse ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") who determined that Plaintiff was not statutorily disabled and therefore not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, or supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c(a)(3). The parties have submitted cross motions for summary judgment. (Doc. Nos. 9, 12.)  The motions have been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.  For the reasons set forth below, this Court recommends that

Plaintiff's Motion for Summary Judgment (Doc. No. 9) be denied and Defendant's Motion for Summary Judgment (Doc. No. 12) be granted.

## I.  BACKGROUND

### A.  Procedural History

On June 24, 2003, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since April 1, 2002, due to a lower back injury. (Tr. at 56-58, 99, 235-36.) His applications were denied initially (id. at 31-35, 240) and on reconsideration (id. at 37-39, 237). Plaintiff timely requested an administrative hearing. (Id. at 40.) He appeared before Administrative Law Judge (ALJ) David K. Gatto on April 19, 2005. (Id. at 249.) In a decision dated June 23, 2005, the ALJ denied Plaintiff's applications for benefits. (Id. at 12-23.)

Plaintiff sought review by the Social Security Administration Appeals Council, which denied his request for review, and thus, the ALJ's decision became the final decision of the Commissioner. (Id. at 7-9, 11.) Plaintiff filed a timely appeal in federal court on May 24, 2006 (Doc. No. 1), and a motion for summary judgment on August 15, 2006 (Doc. No. 9).  Defendant filed his motion for summary judgment on September 26, 2006. (Doc. No. 12.)

### B.  Factual Background

At the time of the administrative hearing, Plaintiff was forty-four years old. (Tr. at 247.) He has a ninth grade education, a GED, and previous work experience as a carpenter, painter, and building maintenance worker. (Id. at 247, 253.) Plaintiff last worked full-time in March 2002 as a maintenance worker, although he drove a cab part-time from December 2002 until April 2003. (Id. at 255, 256.) Plaintiff claimed he lost his job as a maintenance worker for excessive absenteeism caused by his back

injury. (Id. at 255.) According to Plaintiff, the pain was so severe that he could barely get out of bed. (Id. at 256.)

Plaintiff testified that he has pain in his lower back, which is often centered but sometimes is located on one side. (Id. at 262.) The intensity of his pain can change throughout the day. (Id. at 262.) At its best, his pain is a three on a ten-point scale, and at its worst, a nine or ten. (Id. at 262-63.) The pain is sometimes mitigated by standing or lying down for short periods of time, but is worsened by standing or sitting for extended periods of time. (Id. at 263-64.)

Plaintiff also stated that he can no longer lift or carry anything heavier than ten pounds, nor can he stoop, crouch, crawl, or bend very much. (Id. at 264). When his back pain is at its worst, which is about three or four days a week, he has trouble concentrating and becomes "irritable, impatient, [and] short-tempered." (Id. at 265-66.) When Plaintiff is active, he can walk for only about fifteen to twenty minutes at a time and can do housework for approximately ten minutes at a time. (Id. at 266-67.) He also claimed that his sleep is often interrupted several times each night due to pain and multiple trips to the bathroom. (Id. at 267.) Although Plaintiff has diabetes, his doctor considers it to be under control. (Id.)

Plaintiff testified that he received worker's compensation benefits until June 30, 2003, and he received a final settlement on September 3, 2003. (Id. at 254-55.) Plaintiff also received unemployment insurance benefits until just before June 2003. (Id. at 255.)

### C. Medical Evidence of Record

Plaintiff began treatment with Dr. John Dowdle on September 25, 2001 for his low back pain. (Id. at 158.) Dr. Dowdle diagnosed Plaintiff with obesity with deconditioning and mechanical back pain

3

with degenerative discs. (Id.) Dr. Dowdle prescribed oral anti-inflammatory medicine, and he recommended that Plaintiff wear a low back support. (Id.) He also advised Plaintiff to change positions more often. (Id.) On October 17, 2001, Plaintiff had a follow-up appointment with Dr. Dowdle. (Id. at 155.) The doctor noticed less discomfort. (Id.) He recommended that Plaintiff return to work with a twenty-five pound lifting restriction. (Id.)

Plaintiff returned to Dr. Dowdle on November 5, 2001, for treatment of his back pain. (Id. at 152.) Dr. Dowdle noted that despite repeated instructions to Plaintiff to wear a back support, Plaintiff was not doing so. (Id.) Plaintiff had a follow-up appointment with Dr. Dowdle on December 18, 2001. (Id. at 151.) Dr. Dowdle noted that Plaintiff was experiencing back pain, as well as tenderness with movement and activity. (Id.) Dr. Dowdle limited Plaintiff to lifting no more than twenty-five pounds, avoiding overhead motions, no kneeling, and wearing a low back support. (Id.)

On February 20, 2002, Dr. Dowdle evaluated Plaintiff's back pain. (Id. at 149.) Dr. Dowdle noted that Plaintiff had experienced a flare-up of back pain with muscle spasms. (Id.) Plaintiff had not worked for several days due to this condition, but Dr. Dowdle recommended that Plaintiff resume working with a twenty-five pound lifting restriction. (Id.) Plaintiff returned to Dr. Dowdle on May 23, 2002. (Id. at 148.) Dr. Dowdle repeated his earlier diagnoses, continued Plaintiff's prescription of Darvocet, and started him on Celebrex. (Id.)

Plaintiff began receiving medical care from Dr. James Gerber in early 2002. (Id. at 189.) His first report of back pain to Dr. Gerber was on June 11, 2002, and Dr. Gerber referred him to a pain clinic. (Id. at 187.) Plaintiff subsequently had a general physical examination with Dr. Gerber in July 2002. (Id. at 186.) Plaintiff had no specific complaints, and Dr. Gerber's findings were mostly normal.

(Id.)

Plaintiff underwent a CT scan on July 20, 2002, and Dr. John Knoedler interpreted the results. (Id. at 194-96.) Dr. Knoedler saw mild bulging with Plaintiff's L4-5 disc and noted some compression, which "could be imaged further with MRI." (Id. at 194.) Dr. Knoedler also saw mild bulging but no compression with Plaintiff's L5-S1 disc. (Id. at 195.) Dr. Knoedler's assessment was "some very minimal degenerative changes without disc space narrowing. The lumbar spine series is otherwise unremarkable." (Id. at 196.)

Plaintiff saw Dr. Gerber several times over the next few months for treatment of his diabetes, and he returned to Dr. Gerber on March 18, 2003, for treatment of his back pain. (Id. at 182.) Dr. Gerber remarked that Plaintiff was experiencing more pain and needed more medication. (Id.) Dr. Gerber thought that Plaintiff needed an MRI scan of his back, but worker's compensation would not pay for it. (Id.) A few months later, on June 4, 2003, Dr. Gerber wrote that Plaintiff was continuing to have back problems and that Plaintiff needed surgery, but worker's compensation was also refusing to pay for surgery. (Id. at 181.) Dr. Gerber continued Plaintiff on Vicodin. (Id.)

A consultative examiner, Dr. Dan Larson, examined the medical record on July 8, 2003 and concluded that Plaintiff should be limited to lifting or carrying no more than twenty-five pounds frequently; standing or walking no more than six hours in an eight-hour workday; and sitting no more than six hours in an eight-hour workday. (Id. at 160.) Another consultative examiner, Dr. Thomas Chisholm, opined on August 13, 2003, that Plaintiff should be limited to lifting or carrying no more than ten pounds; standing or walking between two and six hours in an eight-hour workday; and sitting about six hours in an eight-hour workday. (Id. at 168.)

On October 6, 2003, Dr. Gerber and Plaintiff discussed the possibility of back surgery and filled out relevant forms. (Id.) Dr. Gerber also recorded his opinion that Plaintiff could not work in his present condition. (Id.) That same day, Dr. Gerber completed a Lumbar Spine Residual Functional Capacity Questionnaire. (Id. at 202-07.) He wrote that Plaintiff suffered back and leg pain and degenerative disc disease. (Id. at 202.) He also wrote that Plaintiff's pain was so severe as to "constantly" interfere with his attention and concentration. (Id. at 203.) However, Dr. Gerber thought Plaintiff's prognosis would be good as long as he had surgery. (Id.) Dr. Gerber limited Plaintiff to sitting no more than twenty minutes at a time and standing no more than twenty minutes at a time. (Id. at 204.) Dr. Gerber also limited Plaintiff to sitting less than two hours in an eight-hour workday, and standing or walking less than two hours in an eight-hour workday. (Id.) Dr. Gerber thought Plaintiff would have to take two or three breaks during a workday, each lasting fifteen minutes. (Id. at 205.) He recommended that Plaintiff never lift more than ten pounds. (Id. at 206.) Finally, Dr. Gerber wrote that Plaintiff would be absent from work more than four times a month as a result of his pain. (Id. at 207.)

On May 5, 2004, Plaintiff had an MRI scan of his back. (Id. at 225.) The interpreting physician, Dr. Jeffrey Magnuson, found only minimal and mild bulging and degenerative changes. (Id.) Plaintiff subsequently met with a neurosurgeon, Dr. Miriam Kim. (Id. at 227-28.) Dr. Kim did not think Plaintiff was a candidate for surgery because the MRI revealed only mild degenerative changes, no significant alignment abnormalities, and only a small disc protrusion on the right L4 nerve. (Id. at 228.) She advised conservative treatment, including physical therapy and weight loss. (Id.)

Plaintiff returned to Dr. Gerber on October 12, 2004. (Id. at 210.) Dr. Gerber thought it "really apparent [Plaintiff] is unable to work because of the significant pain in his back." (Id.) Dr. Gerber wrote

6

a prescription for Oxycontin. (Id.) Dr. Gerber's final treatment note of record is dated March 24, 2005, and he remarked that Plaintiff presented with increased back pain, for which he was prescribed Flexeril. (Id. at 234.)

### D. Testimony of the Medical Expert

Dr. Joseph Horozaniecki testified at the administrative hearing as a neutral medical expert (ME). (Id. at 271.) After reviewing all of the medical records, Dr. Horozaniecki concluded that Plaintiff's physical impairments were lumbar degenerative disc disease, obesity, and diabetes mellitus Type II. (Id. at 272.) Dr. Horozaniecki also mentioned the presence of hypertension but found that Plaintiff's hypertension did not rise to the level of a physical impairment. (Id.) Further, the ME described Plaintiff's diabetes as "sometimes good and sometimes not good . . . [t]hroughout the medical record that I have for the most part, not so good," but also stated that the diabetes had recently improved. (Id.)

After opining that Plaintiff's conditions did not meet or equal any listed impairment, Dr. Horozaniecki assessed Plaintiff's residual functional capacity (RFC). (Id. at 273.) In doing so, he testified that Plaintiff was limited to a sedentary level of exertion,[1] with some additional limitations. (Id.) Namely, Plaintiff should be allowed to change position or posture for up to fifteen minutes each hour; no kneeling, crawling, squatting, stooping, or crouching; and only occasional and non-repetitive

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

bending. (Id.) Additionally, Plaintiff should be restricted from doing any overhead work. (Id.) The ME also testified that Plaintiff's diabetes could cause additional restrictions if it was not under control. (Id. at 274.)

### E. Testimony of the Vocational Expert

At the hearing, the ALJ posed the following hypothetical question to the vocational expert (VE), William Villa:

> If you had a hypothetical man between the ages of 41 and 44, and that man had the severe impairments of diabetes mellitus Type II, degenerative disc disease in the lower spine that resulted in lower back pain, and obesity. Those impairment [sic] resulted in limiting that man to no more than – performing no more than sedentary work. The work would require an hourly change of position for up to 15 minutes out of every hour. There would be no kneeling, stooping, crouching, or crawling. Only occasional non-repetitive bending, and there would be no overhead work performed. Would that person be able to perform any of Mr. Morse's past relevant work?

(Id. at 277.) The VE responded negatively to this question because all of Plaintiff's past work was of medium exertion. (Id.) The VE then testified to the existence of sedentary jobs in the regional economy, which Plaintiff could perform, however. (Id. at 277-78) Such jobs included inspector, surveillance system monitor, and cashier. (Id.)

### F. The ALJ's Decision

The ALJ analyzed Plaintiff's claims using the required five-step sequential evaluation: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is capable of returning to work he has done in

8

the past; and (5) whether the claimant can do other work that exists in significant numbers in the regional or national economy. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920.

At the first step of his analysis, the ALJ noted that after the alleged onset of disability date, Plaintiff worked from December 2002 to April 2003 as a cab driver. (Tr. at 16.) Due to Plaintiff's low earnings, however, the ALJ decided that this work did not constitute substantial gainful activity. (Id.) Plaintiff consequently had not engaged in any substantial gainful activity since the alleged onset of his disability. (Id.) At the second step, the ALJ found that Plaintiff suffered from the severe impairments of mechanical low back pain, mild to moderate degenerative changes in the lumbar spine, obesity, and type II diabetes mellitus. (Id.) None of the impairments, or combination of impairments, met or equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. (Id.)

The ALJ then assessed whether Plaintiff had the RFC to perform any of his past relevant work at step four. (Id.) As part of this analysis, the ALJ evaluated Plaintiff's subjective complaints under Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). (Tr. at 17-21.) In relevant part, the ALJ noted:

> [T]here has been no continuous period of at least twelve months during which the claimant has lacked the residual functional capacity for sedentary level work, requiring hourly changes of position for up to 15 minutes at a time, no kneeling, stooping, crouching, or crawling, only occasional non-repetitive bending, and no overhead work. In reaching this conclusion regarding the claimant's residual functional capacity, the undersigned has given the claimant the benefit of every doubt regarding his subjective complaints, and reduced his residual functional capacity accordingly. However, the undersigned finds no substantial support for further reduction in the residual functional capacity, due to significant inconsistencies in the record as a whole.

(Id. at 17.) The ALJ then detailed numerous inconsistencies in the medical evidence and Plaintiff's

9

reports. (Id. at 17-21.)

Also at step four, the ALJ found that the restrictions suggested by Dr. Gerber were not supported by substantial evidence, and accordingly, he did not give them substantial weight. (Id. at 19.) Instead, the ALJ relied primarily on the opinions of Dr. Horozaniecki, Dr. Larson, and Dr. Chisholm to determine that Plaintiff had the RFC for sedentary work; requiring hourly changes of position for up to fifteen minutes at a time; no kneeling, stooping, crouching, or crawling; only occasional non-repetitive bending; and no overhead work. (Id. at 21.) Based on this RFC, the ALJ determined that Plaintiff could not work in any of his previous jobs. (Id. at 21.)

Turning to step five, the ALJ relied on the VE's testimony to find that there were a significant number of jobs available for a person with Plaintiff's RFC. (Id. at 21-22.) Specifically, Plaintiff could work as an inspector, for which 900 jobs existed; a surveillance system monitor, for which 1,200 to 1,500 jobs existed; and a cashier II, for which 2,000 jobs existed. (Id. at 22.) The ALJ ultimately concluded that Plaintiff was not disabled. (Id.)

## II.   STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "The Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability." Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). "Disability" under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy." Id. § 423(d)(2)(A). The impairment must have lasted or be expected to last for a continuous period of at least twelve months, or be expected to result in death. Id. § 423(d)(1)(A).

### A.     Administrative Review

If a claimant's initial application for benefits is denied, he or she may request reconsideration of the decision. 20 C.F.R. § 404.909(a)(1). A claimant who is dissatisfied with the reconsidered decision may obtain administrative review by an ALJ. Id. § 404.929. If the claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals Council, although review is not automatic. Id. §§ 404.967-.982. The decision of the Appeals Council, or of the ALJ if the request for review is denied, is final and binding upon the claimant unless the matter is appealed to a federal district court within sixty days after notice of the Appeals Council's action. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. § 404.981.

### B.     Judicial Review

Judicial review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence in the record as a whole. Hutsell v. Sullivan, 892 F.2d 747, 748-49 (8th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The review is "more than a mere search of the record for evidence supporting the [Commissioner's] finding." Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980). Rather, "'the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

The reviewing court must review the record and consider:

1. The credibility findings made by the ALJ.
2. The plaintiff's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the plaintiff's impairments.
6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989) (citing Brand, 623 F.2d at 527). A court may not reverse the Commissioner's decision simply because substantial evidence would support an opposite conclusion, Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984), and in reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact, Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). Instead, the court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm that decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

## III. DISCUSSION

### A. The ALJ's RFC Determination

Plaintiff submits that the ALJ erred in assessing his RFC in several respects. Plaintiff first contends that the ALJ failed to give proper weight to the opinions of his treating physician, Dr. Gerber.

A treating physician's opinion is accorded controlling weight where it is well supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Nonetheless, whether a claimant is disabled is a determination reserved for the Commissioner, and a statement by a medical source regarding disability is not dispositive. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Opinions on the final question of disability are not entitled to the same weight as other medical opinions. 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3). "While we recognize that the treating physician is entitled to particular deference, his statements as to the ultimate issue of disability are not controlling." Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991).

An ALJ also need not give controlling weight to a doctor's opinion that is inconsistent with other substantial evidence in the record. Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). Similarly, an ALJ may disregard an opinion that "consist[s] of nothing more than vague, conclusory statements." Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996).

In discounting Dr. Gerber's opinions, the ALJ pointed out that Dr. Gerber diagnosed Plaintiff with degenerative disc disease and constant, severe low back pain. According to Dr. Gerber, Plaintiff's condition would interfere with Plaintiff's ability to maintain attention and concentrate and would cause him to miss work more than four times per month. The ALJ discounted this opinion by stating that "the only clinical findings [Dr. Gerber] cited were reduced range of motion of the spine, positive straight leg raising at 45 degrees, and sensory loss in the toes." (Tr. at 19.) Dr. Gerber also opined that Plaintiff had nerve impingement at his L4-5 disc, but as the ALJ observed, there was no evidence of any neurological defects on examination. (Id.) The ALJ further discounted Dr. Gerber's opinion that Plaintiff

13

suffered from constant and severe low back pain by noting that Plaintiff sought no treatment from June 2002 until March 2003, and when he resumed treatment, Dr. Gerber made no significant clinical findings until October 2003. (Id.) Crucially, Dr. Gerber's findings were inconsistent with Plaintiff's MRI results and Dr. Kim's corresponding opinion, as the ALJ observed. (Id.) Based on the numerous inconsistencies and unsupported opinions throughout the medical record, the ALJ declined to accept the restrictions suggested by Dr. Gerber on October 6, 2003. (Id.)

The Court concludes that the ALJ did not err in finding Dr. Gerber's opinions and restrictions inconsistent with his own treatment notes as well as with other objective medical evidence. Thus, the ALJ was correct in deciding not to give controlling weight to Dr. Gerber's opinions.

Plaintiff also contends that the ALJ failed to consider other factors, set forth in 20 C.F.R. § 404.1527(d), in assessing how much weight to give to Dr. Gerber's opinion. These other factors include the length, nature, and extent of the treatment relationship; the supportability and consistency of the treating physician's opinion; whether the doctor is a specialist; and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(d).

Here, the ALJ acknowledged that Dr. Gerber was Plaintiff's treating physician and took note of the length, nature, and extent of the treatment relationship. (Tr. at 18-20). As discussed, the ALJ also specifically considered the supportability and consistency of Dr. Gerber's opinion; indeed, the ALJ discounted Dr. Gerber's opinion primarily because he found it was unsupported by other objective medical evidence of record. No other factors were brought to the ALJ's attention regarding the weight that should have been accorded to Dr. Gerber's opinion. The ALJ therefore properly considered the factors set forth in § 404.1527(d) in assessing how much weight to give Dr. Gerber's opinion.

14

Finally, Plaintiff faults the ALJ for relying on Dr. Horozaniecki's opinion. Plaintiff cites to certain hearing testimony from Dr. Horozaniecki in which he said that he did not disagree with Dr. Gerber's opinion. (Tr. at 281.) Plaintiff takes this testimony out of context, however. Dr. Horozaniecki said he did not agree with Dr. Gerber's limitation that Plaintiff should not sit, stand, or walk for more than two hours a day. (Id.) When asked why he did not agree with these restrictions, Dr. Horozaniecki testified:

> Well, it's not that I disagree, it's just than my opinion was based on my reading of the entire medical record, and with my familiarity of – and experience with, you know, generative – lumbar degenerative disc disease and as an occupational physician. So it's not that I disagree with him, just that I think my opinion is based on other things.

(Id.) Dr. Horozaniecki clarified that because he was not Plaintiff's treating physician, and given his experience with evaluating disability claimants, he viewed the medical evidence in a more objective light. (Id. at 282.) In addition, Dr. Horozaniecki stated that he had given particular consideration to the opinion of Plaintiff's previous treating physician, Dr. Dowdle. (Id.) An ALJ is expressly permitted to consider the opinions of non-examining medical sources, including medical experts. 20 C.F.R. § 404.1527(f). Therefore, the ALJ did not err in accepting Dr. Horozaniecki's opinion, especially when it was based on objective medical evidence.

The Court finds that the ALJ correctly assessed Plaintiff's RFC. Accordingly, this aspect of the ALJ's decision is based on substantial evidence in the record.

**B.     The ALJ's Credibility Determination**

Plaintiff contends that the ALJ erred in discounting his subjective complaints of pain. In assessing subjective complaints, an ALJ must examine several factors: "(1) the claimant's daily activities; (2) the duration, frequency[,] and intensity of pain; (3) dosage, effectiveness, and side effects

of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (citing Polaski, 739 F.2d at 1322). Other relevant factors are the claimant's work history and the objective medical evidence. Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999) (citing Polaski, 739 F.2d at 1322). The ALJ may discredit subjective complaints based on "inconsistencies in the evidence as a whole," Goodale v. Halter, 257 F.3d 771, 774 (8th Cir. 2001) (citation omitted), as long as he gives his reasons for doing so, Jones v. Callahan, 122 F.3d 1148, 1151 (8th Cir. 1997). "The ALJ need not explicitly discuss each Polaski factor," as long as he acknowledges and considers the factors before arriving at his ultimate credibility determination. Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004) (citing Brown, 87 F.3d at 966). The credibility of a claimant's subjective testimony is primarily for the ALJ, not the courts, to decide. Holmstrom, 270 F.3d at 721.

In the case at hand, the ALJ discounted Plaintiff's subjective complaints primarily because of inconsistencies in the record. (Tr. at 17.) Contrary to Plaintiff's position, the ALJ cited numerous specific discrepancies undermining Plaintiff's credibility. The ALJ began with the objective medical evidence and Plaintiff's self-reports of the duration and severity of his pain. The ALJ discredited Plaintiff's testimony that he was fired in April 2002 for excessive absenteeism due to his back pain because Dr. Dowdle had imposed only a twenty-five pound lifting restriction at this time. (Id.) In addition, Dr. Dowdle's examination findings did not support Plaintiff's complaint of disabling back pain. (Id.) The ALJ then noted that in late 2002 and early 2003, Plaintiff did not mention any back pain to Dr. Gerber despite his reported job as a cab driver, working twelve hour shifts for fifteen to twenty days a month. (Id. at 18.) The ALJ found this evidence "entirely inconsistent" with disabling back pain.

(Id.) The ALJ next considered Dr. Kim's evaluation of Plaintiff, including Plaintiff's self-reported pain and limitations and Dr. Kim's clinical findings. (Id. at 19.) Plaintiff had denied to Dr. Kim that his back pain was constant, that he had pain at night, or that his pain radiated from his back to his legs. (Id.) Dr. Kim thought Plaintiff's back condition to be primarily good, with only mild tenderness in his lumbar region. (Id.) The ALJ found this evidence inconsistent with Plaintiff's subjective complaints. (Id.) Finally, the ALJ recounted numerous inconsistencies within Dr. Gerber's treatment notes (id. at 18-19), which the Court has discussed.

With respect to Plaintiff's daily activities, the ALJ noted that Plaintiff did household chores such as laundry, dusting, and sweeping; drove a car; and walked twice a week for thirty minutes at a time. (Id. at 20.) The ALJ considered Plaintiff's wife's statement that Plaintiff drove her to and from work, left the house daily, shopped twice a week, and ran errands. (Id.) Such evidence is properly considered in weighing a claimant's credibility. Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). Thus, the ALJ did not err in balancing Plaintiff's daily activities against the purported severity of his pain.

As to Plaintiff's work history, his work as a cab driver from December 2002 to April 2003 suggested to the ALJ that Plaintiff's "back impairment was not so severe as to interfere with his ability to drive others, and concentrate." (Tr. at 20.) The ALJ also recounted Plaintiff's testimony that he had received unemployment compensation after April 2002. (Id. at 21.) Seeking or receiving unemployment benefits is inconsistent with a claim for disability, because in order to receive such benefits, the individual must represent that he is able to work. See Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991). Thus, the ALJ correctly discredited Plaintiff in this respect. See id.

Regarding Plaintiff's medication, the ALJ recalled that Dr. Kim had recommended conservative

17

treatment consisting of physical therapy and weight loss for Plaintiff's back pain. (Tr. at 20.) The ALJ found this evidence not only inconsistent with Plaintiff's subjective complaints but also inconsistent with the need for ongoing narcotic medications. (Id.) The ALJ noted additionally that Plaintiff sought only narcotic medication from his doctors and that he never went to a physical therapist or a pain clinic, both of which had been recommended to him. (Id. at 21.) A claimant's failure to follow a recommended treatment regimen weighs against his credibility. Gowell v. Apfel, 242 F.3d 793, 797 (8th Cir. 2001). Finally, the ALJ considered the lack of any side effects resulting from Plaintiff's medications. (Tr. at 21.)

Under the facts of this case, the Court cannot say that the ALJ improperly assessed the credibility of Plaintiff's subjective complaints. Accordingly, the Court finds that substantial evidence in the record as a whole supports the ALJ's credibility determination.

### C. The Hypothetical Question Framed by the ALJ

Plaintiff argues that the ALJ failed to propound a proper hypothetical question and therefore did not meet his burden at step five of the sequential analysis. Plaintiff presumes that the Court will adopt his argument that the ALJ's determination of his RFC was faulty.

A hypothetical question must include only the impairments and limitations accepted by the ALJ. Pearsall v. Massanari, 274 F.3d 1211, 1220 (8th Cir. 2001) (citing Chamberlain v. Shalala, 47 F.3d 1489, 1495-96 (8th Cir. 1995)). Here, the Court has found that the ALJ did not err in assessing Plaintiff's limitations and impairments, and the hypothetical question accurately reflected the ALJ's assessment.

**IV.   RECOMMENDATION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED that:**

1. Plaintiff's Motion for Summary Judgment (Doc. No. 9) be **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. No. 12) be **GRANTED**.


Dated:  July 24, 2007

                                                                        s/ Susan Richard Nelson
                                                                        SUSAN RICHARD NELSON
                                                                        United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by August 8, 2007, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.